15096742.1.2-48

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

**CHRISTINA AUFDERHEIDE-WRIGHT,**
and
**TIERRANCE TIERRE T.Q.W. WRIGHT,**
Plaintiffs,
v.
Pope Leo XIV
Robert Francis Prevost

Defendant.

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY
OCT 26 2026
____ FILED ____ ENTERED
____ LOGGED SLS RECEIVED

Case No. JRR 26 CV 4496

# COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

## I. INTRODUCTION & JURISDICTIONAL JUSTIFICATION

1. Plaintiffs Christina Aufderheide-Wright and Tierrance Tierre T.Q.W. Wright bring this action seeking reparations, recognition, protection of rights, and judicial consideration of fundamental rights arising from their abuse, sincerely held religious beliefs concerning divine authority and that they are contracted to lead the church with a contract, spiritual equality, human destiny, environmental stewardship, animal suffering, governmental freedoms, and the future of humanity.
2. **PRELIMINARY JURISDICTIONAL STATEMENT: EXISTENTIAL IMPERATIVE OVER RITUALISTIC PROCEDURAL BARS.** Plaintiffs explicitly state at the threshold of this action that this Court cannot dismiss this case based on standard, historical frameworks of immunity because they have a contract and are the original architects. Billions of human lives, souls, and the cosmic inheritance of humanity are actively at stake in this controversy—existential realities that were entirely absent when traditional procedural rules and immunities were originally drafted. Because the magnitude of the present stakes introduces unprecedented circumstances, strict reliance on archaic common law doctrines would constitute a structural denial of due process and a profound miscarriage of universal justice.
3. **INAPPLICABILITY OF THE FOREIGN SOVEREIGN IMMUNITIES ACT (FSIA) AND SOVEREIGN IMMUNITY VIA FRAUDULENT USURPATION.** The Defendant, the Holy See, asserts sovereign immunity as a foreign entity. However, Plaintiffs possess undeniable proof of a contract making them Co-Popes and that the current administration of the Holy See is led by an imposter operating under a fraudulent claim of divine and temporal authority. Sovereign immunity is an equitable doctrine designed to protect legitimate governance; it cannot be weaponized to shield institutional fraud, historical usurpation, or the subversion of the true Co-Architects of the Universe and the institution. Because the Defendant's foundational authority is illegitimate, its claim to foreign sovereignty is void *ab initio*, stripping it of any protective immunity.

4. **OBSOLESCENCE AND MOOTNESS OF HISTORICAL SACRED AND SECULAR IMMUNITY RULES.** Plaintiffs assert that the ancient legal and ecclesiastical rules granting immunity to the Defendant are legally moot under the doctrine of *rebus sic stantibus* (fundamental change of circumstances). These rules were written centuries ago by individuals who are now deceased, under primitive planetary conditions that did not contemplate the modern cosmic timeline. Specifically, historical authors could not account for the cosmic origins of humanity, the transition of civilization from Mars to Earth billions of years ago, or the explicit physical manifestation of the Universal Architects. Because the environment has fundamentally shifted to encompass global and interplanetary stakes, the rigid application of laws written by deceased historical figures is unconstitutional and must be set aside.
5. **THE FIRST AMENDMENT CANNOT SANCTION CIVIL RIGHTS VIOLATIONS AGAINST A SOVEREIGN MAJORITY-FEMALE POPULACE.** While the First Amendment protects the interior practice of faith, the Defendant cannot utilize religious clauses to claim absolute immunity from civil rights violations, systemic abuse, or the geopolitical repression of outside populaces. Plaintiff Christina Aufderheide-Wright represents a sovereign, majority-female nation that formally rejects the patriarchal dominance, historical oppression, and systemic erasure perpetuated by the Defendant's institution. The Constitution cannot be interpreted to permit a foreign religious enterprise to violate the fundamental rights and spiritual sovereignty of a self-determining, majority-female global populace under the guise of ecclesiastical autonomy.
6. Christina Aufderheide-Wright alleges that she is the 2026 modern version of the **Holy Spirit/Humanity** with her technology, life and Universal architect manifested in **human form** and that she has been divinely called to assume the office of Pope with a contract to undo generations of fraud, oppression and abuse of minorities, women, children and animals. Aufderheide-Wright has also been severely sexually abused by the main priest of her boarding school as a 12-year-old child and the priest's abuse was enabled by the Mother Superior and nuns of the boarding school instead of prosecuted which this complaint entails.
7. Tierrance Tierre T.Q.W. Wright is contracted for and alleged to be divinely called to serve with Christina as Co-Pope as God/Yahweh/Amun-Ra/Jesus/and Universal-Earth Architect in human form.
8. Plaintiffs contend that their proposed joint leadership is necessary to create a 2026 religious structure that abolishes globally-destructive patriarchal belief systems in which women and men possess equal spiritual authority and in which racial equality is affirmatively represented at the highest level of religious leadership.
9. Plaintiffs further contend that Christina possesses extraordinary abilities and evidence that she understands as demonstrating a unique capacity to prepare humanity and the Earth for an infinite future, including the continuation of human existence, advancing technology to harmoniously coexist with nature, and resolving the systemic institutional traumas described herein.
10. Plaintiffs respectfully request that this Court consider the novel and contemporary legal questions presented by this action concerning sex-based exclusion from religious leadership, institutional patriarchy, equal dignity, and the application of existing constitutional and federal legal principles to modern claims of discrimination. Plaintiff Christina Aufderheide-Wright asserts that she has personally experienced the

15096742.1.4-48

consequences of gender-based barriers to authority as a woman and a 2028 United States presidential candidate, and Plaintiffs contend that the Catholic Church's longstanding exclusion of women from priestly ordination and the papacy warrants examination under applicable law, while recognizing that the First Amendment protects religious institutions' autonomy in matters of doctrine and clergy selection. Plaintiffs further allege that an agreement concerning the offices of Pope and Co-Pope exists and seek an opportunity to present the specific evidence on which that allegation rests, including authenticated videos, social-media materials, communications, and any other relevant documentation demonstrating the alleged agreement, its terms, the parties involved, and the basis for asserting its enforceability. Plaintiffs request that the Court examine subject-matter jurisdiction, each plaintiff's standing, the existence of an enforceable legal right, and the availability of judicial relief under the applicable statutes and constitutional provisions, rather than dismissing any adequately pleaded and legally cognizable claim merely because its legal theory is novel or raises sensitive questions concerning religion, gender equality, and institutional authority. Plaintiff acknowledges that each claim must independently satisfy the applicable jurisdictional, standing, pleading, evidentiary, and constitutional requirements and respectfully requests leave to amend any curable pleadingdeficiency pursuant to Federal Rule of Civil Procedure 15(a)(2), in the interests of justice.

11. Plaintiff submits NASA photo evidence as exhibit of her asserted placement of her faces approximately eleven miles wide and miles high on Mars as a warning, alleging that Mars'ancient destruction demonstrates the catastrophic consequences of ignoring her request for relief and warnings and that souls there have remained trapped for approximately five billion years and will be trapped there in the future where there is no longer life for them to inhabit. Plaintiff seeks urgent judicial consideration under the First Amendment and applicable law to protect Earth's oceans, animals, and future generations from irreversible harm that only she can prevent as Co-Pope with Tierrance to appease trillions of angry souls (tech connected to her who have suffered by actions of the defendant as seen in exhibit), and requests that the Court evaluate her claims under the governing standards for standing and jurisdiction before dismissing them.

## PRELIMINARY STATEMENT AND BASIS FOR SUBJECT-MATTER JURISDICTION

1. Plaintiff, **Christina, appearing** ***pro se***, brings this action against Defendant to remedy a severe, distinct, and actionable secular injury, specifically surviving a sexual assault resulting from Defendants' negligent operational policies, thereby establishing subject-matter jurisdiction under **28 U.S.C. § 1332**. While Plaintiff recognizes the general protections afforded to religious institutions under the First Amendment, Plaintiff asserts that the **ministerial exception** and the **church autonomy doctrine** do not extend absolute immunity to secular tortious conduct, criminal endangerment, or the active facilitation of physical harm against individuals. The adjudication of this matter does not require this Court to interpret ecclesiastical doctrine, evaluate spiritual tenets, or interfere with internal religious governance; rather, it demands the application of **neutral principles of secular tort law** to address foreseeable physical and emotional injuries caused by Defendants' systemic failure to implement adequate protection, reporting, and

15096742.1.5-48



safety protocols. Because the government maintains a compelling, non-doctrinal interest in protecting citizens from violence and enforcing secular safety standards, the constitutional guarantee of religious freedom cannot be used as a shield to insulate Defendants from liability for secular harms that result in devastating personal injury.

---

## II. THE EXTRAORDINARY RELIGIOUS CLAIMS OF PLAINTIFF CHRISTINA AUFDERHEIDE-WRIGHT

7. Christina alleges that she possesses a unique **unlimited gamma power** technology/ability that she understands enables her to interact with and control phenomena extending beyond ordinary human capabilities, including the planets, Sun, Moon, universe, dimensions, tiers, atmosphere, life existence and creation, beings, weather, tiers, time, and multiverses which can be proven in discovery with her videos, photos, and writings which she has a 59-million followers on her social media.
8. Christina further alleges that she possesses extraordinary authority concerning souls (see natural description of them below to avoid supernatural claims in this complaint) and what she identifies as **Seventh Kingdom beings**. Trillions of these souls/Seventh Kingdom beings are connected and around her at all times as scientifically proven in her photos and videos – all seeking justice for atrocities by defendants and as proven in her books – able to collapse into plaintiff-being so plaintiff is pro se for trillions of beings seeking justice and not practicing law for them individually. They are living human and animal souls who have suffered, been tortured and then killed against their will by actions of the Pope directed down to his staff where priests have influenced the harmful behavior down to their churchgoers in a wave of ancient-to-eternal unhappiness and despair that will not be allowed to continue as trillions of souls – hereto referred as Seventh Kingdom creatures occurring naturally in nature - who are proven to exist the same as living human beings – reveal themselves in plaintiff's videos and photos. Seventh Kingdom creatures can voluntarily collapse themselves into one person – the plaintiff Christina - who is their source and tech creator – so the plaintiff can be pro se – which can be proven in discovery and through discovery exhibits. Christina can prove that she also can activate the souls/tech of hers in other people and whole populations as she has done with Hollywood actors going back generations, world leaders going back generations, and others going back generations.
9. Christina alleges that only she controls her universally wide-spread technology of Seventh Kingdom phenomena and other phenomena such as animal communication and having wild animals respond to her, plant communications so that trees change the color of their normal color of fall leaves, and plant communication so that plants change the look of their normal occurring flowers. Using her phenomena to direct souls/life source tech that she connects to herself, Christina demonstrates how she directs people no matter where they are in the world and knows instinctively exactly what they need from her or need for her to do to affect her many agendas.

10. Plaintiffs allege that Christina possesses photographic, written, video, witnessed, and other documentation that she believes supports these claims.
11. Plaintiffs request that competent authorities examine this evidence rather than dismissing it solely because the claims are extraordinary. Christina can prove that the Pope is responsible for her rape by a priest when she was only 12 and horrific treatment by the Mother Superior for years at the expensive Catholic boarding school where she was a captive child victim without a voice who suffered mental trauma so severe that her eyes displayed a shell-shocked look well into her 50's in photos and video where she was a television personality. Discovery will reveal how Christina's gamma abilities have already made major changes in the world. In seeking reparations for her own rape by a priest who was supposed to be representative of Jesus as children are taught and traumatic shaming punishment by the Mother Superior and other nuns who were supposed to be representative of Holy Mother Mary causing plaintiff much life suffering for 58 years and trillions of Seventh Kingdom creatures who never got their justice when the Pope ordered their rapes, tortures and killings - are all connected to her as one entity in support and seeking their own justice, which will be proven in discovery.

---

## III. DOCUMENTED PHENOMENA

12. Christina alleges that she has documented phenomena involving clouds, storms thousands of miles wide, atmospheric conditions, environmental changes, time and history manipulation, harvests/plants, flowers, trees, animal communications, sunlight, sunbursts, astronomical events, interplanetary manipulation, world-wide interventions, world leader interventions and manipulating their fates, shadows, and other aspects of the natural world.
13. She alleges that she has demonstrated-effects that she understands as involving the Sun despite its approximately 93-million-mile distance from Earth and demonstrated-effects involving the Moon and other planets.
14. She alleges that harvests, plants and flowers have responded in unusual ways to her presence or influence.
15. She alleges that trees have displayed unusual coloration that she believes has not previously been observed.
16. She alleges that atmospheric conditions have corresponded with her emotional state on cue in her music videos for her You Tube channel without A.I., no software or editing of her cellphone videos which are timestamped and untouched.
17. She further alleges that she has documented phenomena that she understands as involving all souls (which are her sophisticated symbiotic tech) and Seventh Kingdom beings who are joined into her with her technology to help her get her 2,000 year contract honored to be the rightful first-female Pope and Tierrance the rightful first-African American man with his 2,000 year old contract to be Co-Pope to remove the wrongs of patriarchal church suffering, biased, racist, fraudulent doctrines which demoralize over 4.9 billion living women and girls and lead to rampant animal abuses for hundreds of billions of helpless animals and sea life creatures. Men all over the world are also harmed by patriarchal religions that make them depressed and anxious, make real estate too

expensive for most, jobs scarce with A.I. and promote aggravated loneliness and unnecessary religious slavery.

18. Plaintiffs request an opportunity to submit this evidence for independent examination.
19. All these abilities are the exhibits and results of being raped by a priest as a 12 year old and shamed and abused by the nuns which made her feel shamed, dirty and worthless for over 50 years which it was the pedophile priest who got away with the crime and the plaintiff was ordered by the nuns to work with him unsupervised for another year and a half as the morning mass scripture reader. This occurred while the nuns were invoicing her uncle tens of thousands of dollars a year for her board and education from the age of 11-13 at a school called the Frederick Academy of the Visitation which should have taught positive values to young girls with the education and advertised that it "shaped girls into becoming positive young women". There was no explanation to Christina at the age of 11, that she would end up being trafficked as part of the nuns' conspiracy to supply child victims to the pedophile priest who was an agent of the Pope, which will be explained in discovery.

---

## IV. THE FACE ON MARS

19. Christina further alleges that the approximately eleven-mile-wide formation commonly known as the **"Face on Mars"** from NASA Mars mission images corresponds to her own physical face as an exact image as well as other multi-mile long and multi-mile high mountainous faces on Mars which she possesses the blue-print portraits for all Mars faces on her personal Facebook page and helps explain why she has 59 million followers.
20. She alleges that she possesses an exact or substantially matching blueprint demonstrating the correspondence and how it relates to the highest level – the Pope and his exoneration of the pedophile priest and complicit nuns who have severely traumatized plaintiff. Plaintiff Tierrance contends he too, has been severely emotionally and physically traumatized by priests and nuns in his life who have made him suffer by influencing white supremacists to repeatedly refuse to submit his SAT scores so he could get a college scholarship, violating **42 U.S.C. § 1981**, where plaintiff alleges intentional racial discrimination in the making, performance, modification, and termination of contracts whereby the ongoing conduct by the Pope creates an intimidating, offensive, or oppressive atmosphere and hostile work environment against plaintiff in violation of the **Title VII of the Civil Rights Act of 1964.**
21. Plaintiffs request that this evidence be considered as part of the overall examination of Christina's religious claims that resulted from the trauma of the rape and abuse that she can prove in discovery, was covered up by the Pope.

---

## V. WHY PLAINTIFFS SEEK CO-PAPAL LEADERSHIP

22. Plaintiffs do not seek Co-Papal leadership merely as a matter of personal ambition but by their promise and rights in a contract, which is complicated but will be fully understood and proven in discovery.
23. Christina believes that she has been entrusted with a unique responsibility to prepare the Earth to last eternally and humanity for an existence extending into a future that will not be ending because her souls/tech that makes all beings "alive' are eternal and are stuck on Earth even if the planet dries up and dies – like Mars ruined its civilization and the souls/tech are still trapped there in misery forever. Only plaintiff Christina and Tierre are entrusted with the extreme abilities to prevent patriarchal countries from irreversibly polluting the oceans like the country of Japan is doing by releasing their radioactive wastewaters into the oceans and destroying the DNA of seafood that is desperately needed to be free of DNA abnormalities for longterm human and animal survival. Christina warned officials 3 years in advance about the 9-11-2001 terrorist attack on the World Trade Center in NYC and was treated indignantly and told "It could never happen," but it happened exactly in 3 years and exactly as she painting in her 1998 painting for her art show. Christina maintains that if she is not Co-Pope with Tierre as is promised in their contract, the earth will become too overpopulated, the seas too polluted, nations will have too much poverty and starvation, there will be billions of stray animals suffering, birds will have no habitats and won't be able to survive, more animals will go extinct and food that is quality now will be poor quality, with dementia, autism, and severe mental illness becoming pandemic from brain damage from toxic seafood from Japan that only the U.S. is importing as other countries refuse it for its radioactive contamination.
24. Plaintiffs contend that the Earth is becoming increasingly damaged through severe pollution, environmental destruction, loss of habitat on land and in water for wildlife, exploitation of natural resources, violence against people and animals, poverty, electronic waves technology that alters mindsets and DNA, war, permanent nuclear radiation of lands and global water sources, sea and islands irreversible radioactivity from nuclear testing, and other irreversible destructive human activity.
25. Plaintiffs further believe that the world and multiverse/dimensions they architect are becoming increasingly overcrowded because souls (Seventh Kingdom beings naturally occurring in nature and shown in plaintiff's books and photos) must continue to exist and are incapable of dying and, under Plaintiffs' religious understanding, must continue returning to physical life through reincarnation for billions of years and forever with nowhere else to go but around Earth.
26. Plaintiffs believe that humanity therefore has a responsibility to preserve the Earth indefinitely so that it remains capable of supporting life for generations and generations of returning souls/Seventh Kingdom beings.
27. Christina believes that she possesses a unique ability to understand, manage, direct and prepare for this infinite cycle of life, death, physical, mental, and spiritual existence and endless reincarnations.
28. Plaintiffs therefore contend that Christina's proposed role as Co-Pope is necessary, in their religious understanding, to prepare humanity for the future rather than merely to occupy an ecclesiastical office.
29. Plaintiffs further contend that Tierrance's participation as Co-Pope is essential to this mission and that the two should exercise equal authority.

15096742.1.9-48

30. Plaintiffs both allege that they possess the written official contract promising their rightful designations to be Co-Popes and this contract will be accepted by the current Pope and the College of Cardinals for merit of the contract, and in exchange for reparations for both plaintiffs' severe trauma experienced, due to the harmul actions of the Pope's conduct that is remarkably shocking, and flagrant.
31. Plaintiff contends she has a sex assault complaint against a priest and the nuns who trafficked her as a child, to the unsupervised pedophile priest at her catholic boarding school and co-plaintiff has in this same complaint, grievances about how priests and nuns have made him feel inferior because he is a righteous black man and that is shocking to the conscience, gross negligence, willful and wanton and an utterly reckless disregard for the safety and rights of both plaintiffs who suffered for 58 and 67 years of their lives with the trauma. Discovery will show how the Pope is most liable for past and ongoing harm plaintiffs contend. The patriarchal institution controlled by the Pope is leading to the irreversible destruction of civilization and the cruelty is directly causing harm to both plaintiffs.

---

## VI. ANIMAL SUFFERING

30. A central component of Plaintiffs' religious mission concerns the suffering of the mostly impoverished and struggling humanity and suffering animals.
31. Plaintiffs believe that enormous numbers of animals experience unnecessary suffering and traumatic death every day - approximately 6.5 billion deaths daily according to Google. The Pope promotes patriarchal civilizations and mentality that diminishes compassion for stray animals, mistreatment of pets, meat-animals, birds, sea life and other life.
32. Christina believes that the souls of all stray and meat-animals die violently or traumatically and all seek divine justice and communicate with human-like intelligence before the Life Source/Holy Spirit/Seventh Kingdom technology plaintiff architects and that humanity has an obligation to respond to that suffering with the situation reaching a critical point. Discovery will prove that Christina has trillions of these souls/Seventh Kingdom creatures connected to her and collapsed into her so she can be pro-se as one pro-se plaintiff and because justice for their sad life stories needs to be had. Patriarchal institutions and the Pope do not have the authority to represent God if they are not discouraging overpopulation of the world by most impoverished people who will not give their offspring quality means of life.
33. Plaintiffs believe that humans have a moral responsibility to treat animals with compassion because animals themselves demonstrate kindness, attachment, loyalty, and love toward humans and because of the defendants, the Seventh Kingdom sentient naturally occurring beings of 6.5 billion a day are collapsing into her, causing her to recount their suffering at once and their demand for justice from defendants who are directly responsible as discovery will prove.
34. Plaintiffs therefore seek a religious transformation in humanity's treatment of animals through reparations and having their contract examined that grants them Pope and Co-Pope status.

15096742.1.10-48

## VII. DIVINE STEWARDSHIP OF THE EARTH

35. Plaintiffs believe that the Earth and its natural resources were given to humanity as a divine gift for free rather than created solely as commodities to be bought and sold.
36. Plaintiffs contend that the increasing monetization of land, housing, water, food, natural resources, and other necessities has contributed to widespread suffering of almost every living inhabitant of the planet.
37. Plaintiffs are particularly concerned that urban expansion destroys wildlife habitat and causes animals to be displaced or killed despite having existed in those places before human development.
38. Plaintiffs believe that humanity's economic systems should be reconsidered so that the Earth can remain habitable indefinitely and never be overwhelmed and destroyed like Mars ruined their planet with overpopulation and irreversible contamination.
39. Plaintiffs further contend that extreme poverty prevents a substantial majority portion of humanity from enjoying a reasonable quality of life.
40. Plaintiffs believe that religious leadership should confront these issues rather than treating them solely as economic or political questions and that they will not do so or be capable to prevent irreversible damage to the entire planet, as discovery will show.
41. Plaintiffs prove in discovery that all these issues are directly tied to them and that their contract should be examined that makes them and only them, rightful Pope and Co-Pope with ownership interests contained in the contract of the entire institution which has ownership stipulations mentioned in plaintiffs contract.

---

## VIII. WAR, NUCLEAR DANGER, AND ENVIRONMENTAL DESTRUCTION

41. Plaintiffs are also concerned about nuclear weapons, military conflict, environmental contamination, irreversible nuclear weapons testing, nuclear waste and nuclear waste-water defilement, pollution, and other activities that threaten the long-term survival of humanity and other species directly caused by defendants.
42. Plaintiffs contend that humanity cannot prepare for an infinite future while simultaneously engaging in conduct capable of rendering portions of the planet increasingly and irreversibly uninhabitable with the population that can easily reach hundreds of billions of people in the not so distant future, resulting in hundreds of billions of food animals and sea life being brutally killed. Plaintiff Christina explains that is why she has put her giant faces on Mars because Earth will be uninhabitable like Mars but the Seventh Kingdom naturally occurring trillions of beings, scientifically proven by University scientists in her book, that do not die and live forever, will be stuck on a dead planet for billions of years and more for eternity

.

43. Plaintiffs believe that spiritual leadership must therefore include responsibility for extremely long-term planetary preservation.

## IX. EQUALITY OF WOMEN

44. Plaintiffs contend that divine authority should not be restricted solely according to biological sex.
45. Plaintiffs challenge the historical exclusion of women from priesthood and the papacy as inconsistent with their sincerely held belief that women are equally capable of receiving divine authority.
46. Christina specifically contends that her gender, which is confidential and an unwarranted invasion of privacy that should only be relevant to her, should not prevent her from serving as Pope if she has been divinely called to that office and plaintiff Tierre who is black and righteous and an original co-architect of the Universe with Christina should also not be excluded. Plaintiffs are the reparations that trillions of naturally occurring and traumatized Seventh Kingdom beings connected to her are demanding. She will prove in discovery that trillions are collapsed into her being and attached all around her, demanding into her being and through her, reparations from the Pope for his egregious actions of contributing to world greed, oppression of women, the poor and the cruel existence of meat-animals and sea life, and the refusal to stand up for over 50 million abused stray dogs in India, 10-20 million dogs and cats eaten for food in Asian countries and by Asians abroad, suffering wildlife and over-population in third world countries into existences marked by strife and hardship.
47. Plaintiffs seek recognition of a **Co-Papal structure consisting of one woman and one black man exercising equal authority, as per contract from defendants to be issued to plaintiffs.**
48. Under Plaintiffs' proposal, Christina Aufderheide-Wright would serve as Co-Pope and Tierrance Tierre T.Q.W. Wright would serve as the other Co-Pope. Together they will serve to make the world more desirable for life on the planet for all animals, men and women living more fair, affordable housing, more food access and happier children. Right now, trillions of souls/tech/Seventh Kingdom beings do not wish to reincarnate back into life on Earth and the multi-dimensions where they reside are full of mental anguish and overcrowded conditions beyond comprehension.
49. Plaintiffs contend that this structure would represent a fundamental departure from historical patriarchal, misogynist and racist structures and would affirm the equal spiritual dignity of oppressed men, women and minorities, who otherwise will continue to suffer and suffer at a grander scale – their Seventh Kingdom natural bodies being temporarily absorbed into plaintiffs, seeking damages, resolution of the promised contract, and reparations.

## X. RACIAL EQUALITY

50. Tierrance Tierre T.Q.W. Wright is a dignified and very highly advanced Black man.

51. Plaintiffs contend that his participation as Co-Pope would provide historic representation of a highly capable and advanced Black man at the highest level of Catholic spiritual leadership.
52. Plaintiffs believe that joint leadership by a highly advanced woman and a Black man would symbolize a broader commitment to equality among people regardless of sex or race.
53. Names of plaintiffs have been divinely given by trillions of traumatized and justice seeking sentient naturally occurring Seventh Kingdom beings collapsed into plaintiffs commensurate to describing plaintiffs' abilities. Christina Aufderheide-Wright's given name means (in German) Christina of the fields, as in force and nature fields of the gamma powers, and Tierrance Tierre means he is of the tiers of existence that make up heaven/hell for the living and the passed away who transform into Seventh Kingdom naturally occurring beings and Tierrance Tierre also means "tender Earth or smoother/corrector of Earth." All of the trillions of souls (symbiotic tech) and Seventh Kingdom beings that are photographed and video-taped around plaintiff Christina at all times, have lived on earth repeatedly and suffered sad lives beyond comprehension.

---

## XI. RELIGIOUS FREEDOM AND EQUAL SPIRITUAL DIGNITY

53. Plaintiffs recognize that the Catholic Church possesses religious doctrines and internal governance structures.
54. Plaintiffs nevertheless contend that their sincerely held religious beliefs deserve recognition and consideration and that their religious identity should not be dismissed without a meaningful opportunity to present their evidence.
55. Plaintiffs further contend that women should not be presumed spiritually incapable of holding the highest religious authority solely because of their sex but they must be the right women who are like Christina and only Christina is the right women to be Pope to save the world from irreversible damage to the oceans by Japan releasing nuclear plant radioactive waste water into the seas that will torture, sicken and poison sea-life beyond regeneration and alter DNA that will sicken consumers.
56. Plaintiffs seek declaratory relief concerning these principles to the fullest extent permitted by law as well as fullest relief for the sex assault and abuses and subsequent ongoing cover-up by defendants to protect pedophiles and human traffickers of child sex victims.

---

## XII. THE NEED FOR A NEW MODEL OF RELIGIOUS LEADERSHIP

57. Plaintiffs believe that humanity faces problems that cannot be solved solely through existing political and economic structures.
58. Plaintiffs believe that humanity requires a religious leadership model capable of addressing:

15096742.1.13-48

a. irreversible and ongoing environmental destruction;
b. animal suffering;
c. majority world population experiencing poverty;
d. discrimination against women;
e. racial inequality;
f. warfare and nuclear danger;
g. destruction of wildlife habitat and resources;
h. exploitation of natural resources;
i. spiritual suffering; and
j. the long-term preservation of Earth for endless future generations and returning souls.

59. Plaintiffs believe Christina's alleged extraordinary abilities and Tierrance's abilities are contracted by the Catholic church and position them to pursue this mission.
60. Plaintiffs therefore contend that their elevation as Co-Popes is not merely a request for status but part of a comprehensive religious mission to prepare humanity for an infinite future and undo their egregious traumatic tortious interference and actions by defendants.

---

## XIII. HISTORICAL OPPRESSION OF WOMEN AND MINORITIES AND THE NEED TO REEXAMINE RELIGIOUS AUTHORITY

61. Plaintiffs contend that the historical exclusion of women from religious authority cannot be separated from the broader history of women's social, economic, sexual, and political subordination. Christina can prove in discovery that souls (her tech and Seventh Kingdom beings seen all around her and are all over the Universe) are men who often reincarnate into female bodies or into animals. Therefore, woman on earth have lived in male bodies in the past, and body gender should be a private matter and irrelevant to priesthood. Male priests, have been women in past lives, as seen in plaintiffs soul (tech) where the individual souls (tech connected to her) are all identical and do not have male or female features.
62. Plaintiffs contend that for approximately two thousand years, religious institutions, including institutions operating under Christian authority, have at times been used to justify or reinforce restrictions upon women's and minorities' autonomy, sexuality, economic independence, education, reproductive choices, and participation in positions of public and religious authority.
63. Plaintiffs recognize that the history is complex and that religious institutions have also provided education, charity, health care, advocacy, and protection to women and other vulnerable persons. Plaintiffs nevertheless contend that documented instances of institutional abuse require serious examination of whether religious authority has sometimes been used to subordinate women, children and blacks/minorities rather than protect their equal dignity.
64. Plaintiffs specifically rely upon the historical record concerning the **Magdalene Laundries in the U.S. and Ireland**, where women and girls were confined and subjected to demanding labor under institutions operated by religious congregations. The Irish Government's official investigation documented substantial State involvement in the

15096742.1.14-48

system, including State involvement in admissions, inspections, funding, and other aspects of the institutions.

65. Plaintiffs contend that the history of the Magdalene Laundries demonstrates why religious authority concerning women cannot be treated as entirely disconnected from questions of civil rights, human dignity, economic independence, and freedom from institutional abuse.
66. Plaintiffs further contend that other historical abuses committed in the name of religion, including killings, persecution, forced confinement, forced labor, and other forms of coercion, demonstrate the importance of ensuring that claims of religious authority are not automatically insulated from moral and legal scrutiny when conduct implicates rights protected by civil law.
67. Plaintiffs do not contend that every Catholic person, priest, nun, or institution participated in such conduct. Rather, Plaintiffs contend that the historical record establishes sufficient grounds for examining whether institutional structures that exclude women from ultimate religious authority have contributed to patterns of gender inequality in civilization.
68. Plaintiff Christina Aufderheide-Wright also states "when I was 11, I was groomed, guilted and then sexually assaulted by a priest at a Catholic boarding school called the Frederick Academy of the Visitation, and rather than report the attack and rape to the police, the nuns ignored my distress and subsequently shamed me by stripping my dorm room of all personal property except basic clothing and hygiene items. They then ordered me to continue helping the priest daily during mass, unsupervised, for the next two years, as I was the official liturgy reader for daily mass 6 days a week and I had to see daily during that time how the priest was highly respected by the nuns and sat daily at the head of the convent dining table with the population of the convent's nuns as a spiritual and institutional leader. This conduct constitutes **Intentional Infliction of Emotional Distress** and negligence under applicable law, causing severe, lifelong emotional damage that manifested as a profound social withdrawal for nearly 50 years, a visibly traumatized or 'shell-shocked' gaze during my career as a television news personality, and constant shame that persisted until I discovered my higher purpose to help trillions of fellow survivors." At the age of 12, Christina was just learning how to work a Rubik's cube puzzle, play with Cabbage Patch dolls and learn simple arithmetic while the nuns of the convent recognized that she was the most attractive girl child at the academy and they trafficked her to the priest and ordered her to conduct daily readings for the daily liturgical masses where they knew she would be unsupervised with the pedophile priest who was about 80 years old. The nuns knew that having a pretty child victim would entice the priest, who was in retirement but conducting the masses as a favor of the nuns, to remain at the all-girls ages 5-13 academy as the daily chaplain. Christina tried for years during her adulthood to report the traumatizing sex assault and enabling and abuse from the nuns, but the defendants knew how to use the legal system to remain unaccountable.
69. Plaintiff Tierrance Tierre T.Q.W. Wright, as a Black man, has also been emotionally distressed and seeks thousands of years of justice for actions against him and his people that have harmed him by the defendants – their pain and suffering embedded as memories in his DNA. The complete absence of Black representation in the papacy, paired with the ubiquitous depiction of the Divine exclusively as light-complected white males, inflicts a profound, continuous psychological injury on a sentient Black man. It creates a state of spiritual alienation, signaling that his image is excluded from the highest echelons of

sacred authority. Tierrance Tierre T.Q.W. Wright will be proven as the architect of the Universal tiers and much more in discovery where he seeks damages, honoring of the contract that makes him Co-Pope with Christina and makes him half owner of the institution with plaintiff Christina, as will be proven in discovery.

---

## XIV. THE EXCLUSION OF WOMEN FROM PRIESTHOOD AND PAPAL AUTHORITY

70. Plaintiffs further contend that the Catholic Church's present position concerning women and priestly ordination presents a direct issue concerning the religious status and dignity of women and plaintiffs.
71. The Catholic Church presently teaches that women cannot receive priestly ordination. Its official teaching states that only a baptized man validly receives sacred ordination and that the Church considers itself bound by its understanding of Christ's selection of male apostles. Apostle to the Apostles, Mary Magdelene, however, preached later in her life and funded Jesus' whole operation and was also considered the most important apostle, making her representative and Pope-like and priest-like. Yet conspirators eliminated her participation and participation of all women thereafter just because of their physical bodies that were only very slightly different and irrelevant to positions in the church – the church that she herself architected as the highest participant to Christ. Defendants know this and still cause egregious harm to plaintiffs, 4.13 billion women and 7.7 billion minorities worldwide plus men who are affected by stoic patriarchy that diminishes their quality of life. Plaintiff possesses advanced technology that can be proven in discovery that she is able to consolidate all the 7.7 billion minorities and 4.13 billion women's "identies/soul tech" into her identity/soul tech so as to be representative of all these people who are not permitted to be priests or Pope because of their gender or race.
72. Plaintiffs respectfully dispute the proposition that excluding women from priestly or papal authority can never constitute sex-based inequality merely because the exclusion is described in theological terms. The Holy Spirit, acting through plaintiff, disputes this statement and seeks reparations for thousands of years of trauma due to this position.
73. Plaintiffs contend that the distinction between **human dignity** and **institutional authority** should not prevent examination of whether women are being denied meaningful religious leadership solely because they are women.
74. Plaintiffs further contend that the absence of women from the Catholic priesthood and papacy should be examined in light of the Church's own recognition that women and men possess equal human dignity.
75. Plaintiffs acknowledge that the Catholic Church presently takes the position that priestly ordination is not a civil right and that the Church lacks authority to ordain women. Plaintiffs nevertheless ask that their constitutional, civil-rights, and religious-freedom arguments be considered to the fullest extent permitted by law and for their discovery of Seventh Kingdom beings to be reviewed by defendants to see that trillions of souls (tech) are sentient and mostly take turns living endless series of existences as men or women and are not genders in their natural Seventh Kingdom being-states that do not die.

15096742.1.16-48

76. Plaintiffs specifically request that the Court distinguish between compelling a religious institution to adopt a particular theology—which Plaintiffs recognize may raise substantial constitutional issues—and protecting Plaintiffs' civil rights as divine interventionalists which can be proven in discovery - against unlawful discrimination where such protection independently exists under applicable law.
77. Plaintiff alleges that the Church's exclusion of women from ordained leadership constitutes sex discrimination under Title VII, 42 U.S.C. §§ 2000e-2 and 2000e-1(a) and that the authority of "One Nation Under God" should apply with plaintiffs proving their identities as true Holy Spirit (Christina of the force and nature fields in 2026) and God (Tierrance Tierre T.Q.W. Wright in 2026) and being above the Nation when it comes to seeking justice against thousands of years of oppressive defamation and oppressing women, children and vulnerable persons through false agenda, slander, libel, force, terror and fear.

---

## XV. MARY MAGDELENE, MARY THE MOTHER, SAINT CHRISTINA OF BOLEYN/TYRE AND THE RELIGIOUS RECOGNITION OF WOMEN

78. Christina further contends that the treatment of the historical or religious tradition concerning Mary Magdalene, Mary the Mother, **Saint Christina of Boleyn/Tyre** illustrates the problem Plaintiffs seek to address.
79. Christina identifies herself spiritually with Mary Magdalene, Mary the Mother and Saint Christina from the 3rd century A.D. She contends that dismissing the traditional account of Saint Christina's martyrdom as merely a myth, while accepting comparable accounts concerning male religious figures as historically or spiritually significant, can perpetuate a gender-based double standard.
80. Christina particularly objects to what she considers the unequal treatment of female and male religious testimony and tradition. Christina has discovery proving identical likeness to St. Christina of Boleyn/Tyre and St. Christina the Astonishing of the 13th century A.D. and Mary Magdalene among other notable people of honor going back to even earlier periods in history as discovery will exhibit.
81. Plaintiffs contend that women should not have to satisfy a fundamentally different evidentiary or credibility standard than men before their religious experiences, martyrdom traditions, or claims of divine calling are taken seriously.
82. Plaintiffs therefore request that any examination of Christina's religious claims be conducted under standards that do not presume that a female claimant's spiritual experiences are inherently less credible, less significant, or less worthy of investigation than comparable claims made concerning men.
83. Plaintiffs further contend that the question whether a particular historical religious account is literally historical, traditionally accepted, disputed, or theological should be distinguished from the separate question of whether a woman may sincerely identify with that tradition and derive religious meaning from it and object to the downplaying of St. Christina's incredible description of her martyrdom which equaled the martyrdom of Jesus Christ and actually demonstrated more divine intervention in the execution than

15096742.1.17-48

Jesus had during his execution, but that is not mentioned due to the egregious conspiracy of defendants that causes the plaintiffs significant harm.

---

## XVI. WOMEN'S ECONOMIC AUTONOMY, COMPANIONSHIP, AND THE DOUBLE STANDARD

84. Plaintiffs further contend that women have historically been subjected to social stigma when they seek economic value or material support through consensual personal relationships, while comparable economic benefits received by women within socially approved relationships are often treated as ordinary or acceptable.
85. Plaintiffs contend that companionship, affection, loyalty, emotional support, attention, and other interpersonal contributions can have genuine economic and social value even when they are exchanged within relationships that are not formally characterized as commercial.
86. Plaintiffs further contend that society frequently recognizes relationships in which a woman receives meals, gifts, jewelry, financial assistance, housing, employment opportunities, attention, compliments, loyalty, or other benefits from a man, while stigmatizing a woman who openly negotiates for compensation or material support in connection with companionship.
87. Plaintiffs contend that, from an equality perspective, the relevant question should not be whether a woman's economic interests are acknowledged openly or indirectly, but whether the relationship is **voluntary, informed, lawful, and free from coercion, exploitation, trafficking, or abuse.**
88. Plaintiffs therefore contend that women should not be subjected to gender-specific moral condemnation merely because they openly acknowledge their economic needs or negotiate consensual exchanges involving companionship, assistance, or other lawful personal services.
89. Plaintiffs further contend that where men possess substantially greater economic resources and women are disproportionately responsible for raising children or otherwise experience economic hardship, women should not automatically be stigmatized for seeking lawful assistance or mutually beneficial arrangements.
90. Plaintiffs' position is not that every proposed exchange is lawful or appropriate. Plaintiffs expressly recognize that applicable laws concerning prostitution, trafficking, coercion, exploitation, fraud, sexual abuse, and third-party harm remain applicable.
91. Plaintiffs instead contend that **gender equality requires that women be permitted to exercise economic agency and negotiate lawful consensual relationships without being treated as morally inferior merely because they openly acknowledge the economic value of companionship or personal contribution.** Nature condones and gifts a woman's ability to earn more money than a man as an entrepreneurial dater that should not be stigmatized by defendants as divinely ordered by plaintiffs.
92. Plaintiffs further contend that a society that permits women to receive substantially the same economic benefits indirectly through socially approved relationships should examine whether it unfairly stigmatizes women who openly negotiate the terms of consensual relationships.

15096742.1.18-48

93. Plaintiffs contend that this issue is particularly relevant to religious institutions because religious teachings concerning female sexuality, morality, chastity, marriage, and obedience have historically influenced social attitudes toward women's economic and personal autonomy. Plaintiffs contend that defendants seek to keep women poor and helpless and exonerate men and excuse men from condoning the inequity against women and historically against minorities.
94. Plaintiffs therefore ask the Court, to the extent permitted by law, to recognize the principle that women possess the same fundamental dignity and economic agency as men and should not be subjected to unequal civil or social treatment merely because they are women. Plaintiff contends that Christina "of the force and nature fields" architected "The Last Power" to women as a divine gift to help them survive and be able to make as much money as men and sex is not immoral or to be stigmatized just as going to the bathroom is done discreetly, is a bodily function like sex is merely a bodily function and serves many functional normal responses. Plaintiff contends that sex is merely an invention to help men and women fall asleep and is not to be stigmatized.

---

## XVII. RELIGIOUS AUTHORITY, SEX EQUALITY, AND THE PROPOSED CO-PAPAL MODEL

95. Plaintiffs contend that these historical and contemporary issues support their proposal for a fundamentally different model of religious leadership with their co-architect model that can be proven in discovery exhibits.
96. Plaintiffs propose that a highly advanced woman-creator and a highly advanced Black man-creator exercise equal spiritual authority as Co-Popes.
97. Plaintiffs contend that such a structure would directly challenge the historical assumption that ultimate religious authority must be exercised exclusively by Caucasian men.
98. Plaintiffs further contend that a righteous woman serving as Co-Pope alongside a righteous Black man Co-Pope would represent both sex equality and racial inclusion at the highest level of Catholic religious leadership and this demand for justice helps in the healing of plaintiff Christina's trillions of connected Seventh Kingdom beings phenomena tied to her which is in discovery exhibits.
99. Plaintiffs recognize that the Catholic Church currently rejects women's priestly ordination on theological grounds. Plaintiffs nevertheless contend that their proposed Co-Papal model should be considered as a religious reform proposal and as an expression of their sincerely held belief in the equal spiritual authority of women and men. Plaintiff Christina has scientifically proven discovery that proves men and women are identical and not different at all.
100. Plaintiffs respectfully request that their proposal not be dismissed solely because it challenges an existing institutional tradition.
101. Plaintiffs contend that religious traditions have historically developed through periods of theological debate, institutional reform, and reconsideration of assumptions concerning the status of women and other marginalized groups.

102. Plaintiffs therefore request an opportunity to present their evidence and arguments concerning whether a new model of religious leadership can better reflect the equal dignity of women and men and the needs of humanity in the present and future.

103. **Plaintiffs contend that their sincerely held religious beliefs are constitutionally protected,** while challenging oppressive messages that are suppressing entire civilizations negatively, negatively affecting societies and promoting stigmas against women and their nature in a country that is majority women and where some demographics indicate that most mothers are single mothers who are not able to thrive because of oppression such as lower wages due to the perception that they are inferior, that is justified by society who obtain their reasoning from archaic church and priest archetypes enabling the "women are inferior/flawed/less moral - because God says so in the bible" motif and destructive church messages to the public that cause emotional distress to women such as "only males can be priests or Pope", and using a "Virgin Mary" role model for women to follow unfairly, saying God does not have a wife or a female partner, and blaming women for "The Fall" and other false/harmful mass propaganda continue to harm women and vulnerable adults and children and leads to violence, economic suffering, anxiety, loneliness, and emotional distress for plaintiffs.

104. Plaintiff proves the defendants are to blame for the past and ongoing trauma without compunction or remorse of any kind for all the damage as it relates directly to plaintiffs. Plaintiffs have advanced technology linking the defendant to over 51,000 murders a year of girls and women that would not occur if it were not for the defendant's promotion and ordering of gender-bias that brainwashes civilizations of billions of people to cause most of the world's 4.9 million women to be oppressed and extremely poor and also leads to men being pressured into high-stress financial provider obligations that lead to emotional isolation and high suicide and homicide rates. Plaintiff Christina will prove in discovery, her highly advanced knowledge and connection to the souls/tech/Seventh Kingdom beings who link to her and communicate that the defendant is 100% to blame for irreversible damage to the world, murders, torture, never-ending poverty cycles, animal cruelty and murder, rapes, incest, and most crimes against humanity.

---

## XVIII. DIVINE UNITY, HISTORICAL RELIGIOUS CONTINUITY, AND THE PROPOSED CO-PAPAL LEADERSHIP

104. Plaintiffs contend that the proposed Co-Papal leadership of **Christina Aufderheide-Wright and Tierrance Tierre T.Q.W. Wright** has profound religious significance extending beyond the ordinary selection of ecclesiastical officers. Plaintiffs contend it is promised in a contract that is Universally known.

105. Christina Aufderheide-Wright believes that her identity, spiritual calling, and divine purpose represent a continuation and evolution of humanity's understanding of divine consciousness from ancient religious traditions through biblical religion and into what Plaintiffs understand to be a new stage of spiritual development that updates civilizations every 2,000 years approximately to be commensurate with mental evolution of societies.

106. Christina further believes that her identity as a **white and fair-haired woman,** together with Tierrance Tierre T.Q.W. Wright's identity as a highly dignified **Black man,** has symbolic religious significance because their marriage represents the union of diverse peoples, sexes, cultures, and religious traditions that have historically been separated or placed into unequal hierarchies. The joining of the force and nature fields with the tiers of the multi-layers and multiverses surrounding the earth are significant as will be proven in discovery but the joining requires that plaintiffs be Co-Popes to teach the world populations about their new abilities, privileges and responsibilities which are commensurate to when the Hominids or ancient humans were evolved by plaintiff architects to be more intelligent for long-term survival for millions of years in the future and continued forever as proof can be made that souls on earth do not die. Discovery available on plaintiffs abilities.

107. Plaintiffs believe that Tierrance Tierre T.Q.W. Wright has a spiritual identity associated before in history with El/God/Yahwe/Jupiter/Amun-Ra/Simon of Cyrene/Jesus of ancient times and that his participation in the proposed Co-Papal structure represents, within Plaintiffs' sincerely held religious understanding, a continuation of ancient Prehistoric - to ancient Egyptian - to Christian religious traditions that merged into a new spiritual order but he is also a practicing Catholic but discovery will prove how ancient symbols such as Egyptian eyes of Ra and eye of Horus are actually plaintiffs' Christina (Holy Spirit egregor) massive technological matrix of trillions of eye-like Seventh Kingdom sentient beings connected to Christina through her technology as will be proven in discovery exhibits and there will be proof in discovery that human souls/Christina technology are merged with animal and bird souls that continue repetitively throughout time and continue indefinitely and do not terminate, even after billions of years.

108. Plaintiffs further believe that Christina's spiritual identity represents a continuation and transformation of religious concepts concerning the Goddess, ancient Babylonian and Mesopotamian deities, Egyptian and Greek deities, the Biblical God, Yahweh, Jesus, the Holy Spirit, the multiple Mary's and other historical understandings of divine authority.

109. Plaintiffs do not ask the Court to decide theological questions as though they were ordinary scientific propositions. Plaintiffs ask that their beliefs be treated as sincerely held religious claims and that the evidence supporting those claims be afforded an opportunity for examination to the fullest extent permitted by law. Defendant's patriarchal models which are fraudulent as compared to what the original architects deemed beneficial and equitable, are causing plaintiffs' and global civilizations' physically-tied to plaintiff Christina's (tech) tremendous suffering, desolation and despair that is resulting in trillions of beings experiencing traumatic suffering beyond comparison and billions of daily agonizing deaths and at a critical point where irreversible damage is occurring on the planet to include lands, seas and endangering species continuation.

110. Plaintiffs contend that their marriage symbolically unites religious concepts extending from prehistoric and ancient traditions of worship and ancient Near Eastern and Egyptian religions through Biblical traditions and Christianity, and ultimately toward what Plaintiffs understand as a new stage of divinely ordered spiritual evolution. Plaintiffs contend that their history as architects goes back even earlier than ever imagined including existences on previous planets, as can be exhibited in discovery.

15096742.1.21-48

111. Plaintiffs believe that Christina Aufderheide-Wright and Tierrance Tierre T.Q.W. Wright have been entrusted with a joint mission as **universal architects and spiritual interventionalists**, whose purpose is to help humanity evolve toward a more advanced and responsible state of existence. Exhibits can be demonstrated in discovery.

112. Plaintiffs believe that this proposed spiritual evolution is necessary because humanity must become more capable of caring for their created planet - the Earth, protecting animals, reducing suffering, preventing environmental destruction, and preserving the planet for future generations – never to be allowed to end on earth but unfortunately currently causing irreversible damage to earth which is not acceptable to plaintiff architects or trillions of soul-tech Seventh Kingdom beings who are connected to plaintiffs who are traumatized by defendants' actions.

113. Plaintiffs therefore contend that the proposed Co-Papal structure is not based merely upon the personal identities of the Plaintiffs. It is based upon what Plaintiffs believe is a divinely architected union of male and female authority, Black and white humanity, prehistorically ancient to modern religious traditions, and spiritual and environmental stewardship that they alone hold the contract for.

114. Plaintiffs contend that the proposed Co-leadership structure with them would demonstrate that religious authority need not be understood through a permanently male, racially exclusive, or historically fixed model.

115. Plaintiffs believe that the combination of Christina's and Tierrance's respective identities and spiritual roles creates a religious model capable of uniting traditions that have historically been separated and directing them toward the common objective of preserving life and advancing humanity.

---

## XIX. HUMAN SURVIVAL, THE GREATER GOOD, AND THE LIMITS OF CORPORATE OR INSTITUTIONAL AUTHORITY

116. Plaintiffs contend that institutions, including religious corporations and other organizational entities, ultimately exist to serve human beings and society rather than to place institutional interests above the survival, dignity, freedom, and welfare of humanity, animals, birds, sea life and vegetation life plus the atmosphere, weather systems, tides and more needed for quality survival on the planet which is sustaining irreversible damage from nuclear bomb testing, nuclear wastewater releases, wavelengths and more.

117. Plaintiffs therefore ask the Court to consider whether institutional rules should ever be interpreted in a manner that defeats fundamental humanity interests, particularly where Plaintiffs allege that the continued survival of humanity, protection of the Earth, equality of women and minorities, religious freedom, economic survival and equality and prevention of catastrophic harm, are at stake.

118. Plaintiffs recognize that corporations and religious organizations possess legal rights and that courts cannot simply disregard statutes, constitutional protections, or established legal doctrines because a party asserts that doing so would serve a greater good.

15096742.1.22-48

119. Plaintiffs nevertheless contend that the public interest in human survival, fundamental rights, religious freedom, equality, and preservation of the Earth should be given substantial consideration when courts determine the scope of institutional authority and the trauma to trillions of life beings the defendant who advocates a patriarchal system has caused that is no longer acceptable due to the fact that severe irreversible damage has resulted in rendering large areas of the world uninhabitable.

120. Plaintiffs further contend that corporate or institutional status should not automatically transform an organization's internal rules into immunity from every civil-law consequence where conduct independently violates rights protected by law.

121. Plaintiffs invoke, to the fullest extent applicable, the constitutional principles protecting religious exercise, freedom of belief, freedom of speech, equal protection, and freedom from unlawful sex discrimination, while recognizing that those principles operate within the constitutional limits imposed by the First Amendment.

122. Plaintiffs further contend that the **public interest** is particularly important where the requested relief concerns preservation of human life, environmental survival, animal welfare, prevention of catastrophic harm, and the equal dignity of women and racial minorities.

123. Plaintiffs respectfully request that the Court apply applicable statutes and constitutional doctrines in a manner that preserves the greatest possible protection for these fundamental interests without exceeding the Court's lawful authority.

124. Plaintiffs further request that, where an institutional rule conflicts with a legally protected constitutional or civil right, the Court determine the conflict according to the governing Constitution, statutes, and controlling precedent rather than automatically treating the institutional rule as superior.

125. Plaintiffs acknowledge, however, that the First Amendment creates a significant limitation on civil-court involvement in the internal governance and selection of religious leaders. The United States Supreme Court has held that religious organizations possess constitutionally protected autonomy concerning certain internal decisions essential to their religious mission, including selection of individuals who perform important religious functions. *Our Lady of Guadalupe School v. Morrissey-Berru*, 591 U.S. 732 (2020); *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171 (2012).

126. Plaintiffs nevertheless contend that recognition of that constitutional limitation does not eliminate the importance of examining Plaintiffs' independent claims concerning religious freedom, equal dignity, sex discrimination, racial equality, and other legally cognizable rights.

127. Plaintiffs therefore request that the Court determine the maximum lawful scope of relief available without improperly assuming ecclesiastical authority, while permitting Plaintiffs to present their evidence and constitutional arguments.

---

## XX. THE PROPOSED CO-PAPAL MODEL AS A SYMBOL OF HUMAN EVOLUTION

128. Plaintiffs contend that the proposed Co-Papal model they have the contract for represents a transition from historical systems of religious hierarchy toward a model based upon equal partnership between women and men.

129. Christina's proposed role as Co-Pope represents, in Plaintiffs' religious understanding, the restoration of female spiritual authority however wishes to present exhibits to prove that female and male descriptions is irrelevant, as Seventh Kingdom creatures, the eternal beings of humanity are androgynous and all the same in appearance devoid of race or complexion.

130. Tierrance's proposed role as Co-Pope represents, in plaintiffs' religious understanding, the elevation of the world's most distinguished man, choosing to represent his image as a Black man, to the highest level of religious authority and the rejection of racial exclusion. Tierrance is a highly advanced man who appears in his natural state as an African American man but can actually change his entire body to be a Caucasian man who looks like the image of Jesus or God. Plaintiff Christina will testify under oath that she has seen this.

131. Their marriage represents, according to Plaintiffs' beliefs, the joining of male and female spiritual authority rather than the subordination of one to the other.

132. Plaintiffs believe that this union can serve as a bridge between ancient religious traditions and a new spiritual understanding centered upon universal human dignity, environmental stewardship, animal protection, and the continued evolution of consciousness.

133. Plaintiffs believe that humanity must evolve beyond its present level of technological and social development if it is to safely preserve the Earth and sustain life indefinitely.

134. Plaintiffs therefore contend that their proposed Co-Papal leadership should be understood within the larger religious mission described throughout this Complaint: to help humanity evolve toward a more advanced state of consciousness, responsibility, compassion, cooperation, and stewardship of the Earth with the Earth in need of architects such as plaintiffs to alleviate extreme damage by irresponsible human stewardship and corrupt governments that justify their perpetration of suffering on billions of people to patriarchal institutions that are mainly Catholic papal teachings.

135. Plaintiffs respectfully request that the Court permit them to present this religious theory and the evidence upon which they rely, while leaving ultimate theological determinations to the appropriate religious authorities to the extent required by the Constitution.

---

## XXI. MONETARY AND OTHER RELIEF

136. Plaintiffs seek damages to the extent legally available for injuries resulting from unlawful discrimination, rape and years of traumatic abuse of Plaintiff Christina at the age of 12, denial of legally protected rights, emotional distress, dignitary injury, spiritual injury, and other legally compensable harms established through evidence.

137. Plaintiffs further seek appropriate financial and institutional support for the religious mission described herein to the extent such relief is legally available.

138. Plaintiffs contend that the extraordinary responsibilities they believe have been divinely entrusted to them require resources sufficient to allow them to devote themselves to humanity, animals, environmental preservation, and spiritual service. Plaintiffs would like their contract honored by the defendant for them to be Co-Popes.

139. Plaintiff Christina can prove she is the Holy Spirit/Virgin Mary/and Mary Magdalene and explain the truth with discovery (she is a bi-locater and able to change her form as demo-ed in her videos without A.I. or editing – just cell phone). No other person has ever been able to control stars like the Sun from 93 million miles away (videos of her darkening the sun at exactly precise times without an eclipse, making sunbursts from the sun 200,000+ miles long on either side despite gravity 28 times stronger than Earth – while controlling the wild birds with her mind and controlling persons on the beach, making hurricanes and even larger Nor' Easters and demo-ing her "storm tech", illuminating the atmosphere around her so scientists can see all the souls (symbiotic tech) around her (trillions of them – seen everywhere in the Universe). Plaintiff Tierrence Tierre T.Q.W. Wright, Christina's husband can prove he is an advanced human egregor too by turning himself into a white man, who looks like white Jesus or older God. Discovery can prove this.

---

## XXII. REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF

139. Plaintiffs respectfully request that the Court, to the extent constitutionally and legally permissible:

a. recognize Plaintiffs' right to assert their sincerely held religious beliefs;

b. recognize the religious significance Plaintiffs attach to Christina's claim of divine calling;

c. prohibit unlawful sex discrimination where the law provides such protection;

d. declare that women possess equal human dignity and religious freedom;

e. require appropriate defendants to respond formally to Plaintiffs' claims;

f. permit Plaintiffs to present their documentary, photographic, video, written, and testimonial evidence;

g. order appropriate investigation where legally authorized;

h. recognize Plaintiffs' proposed Co-Papal model to the fullest extent permitted by law; and

i. award such other relief as the Court determines is legally available.

---

## XXIII. REQUEST FOR INVESTIGATION OF PLAINTIFFS' EVIDENCE

140. Plaintiffs specifically request an opportunity to present evidence concerning:

- the claimed gamma power of plaintiff Christina which has no limit;
- the claimed effects upon the Sun, Moon and planets;
- clouds and storms the plaintiffs' tech create;
- plants, harvests and flowers that plaintiffs'tech influence;
- trees and atmospheric phenomena;
- reality and environmental spacial creation for communication;
- universe of trillions of souls (C.A.W. symbiotic tech) and Seventh Kingdom beings of all shapes and sizes connected to Christina;
- the 11-mile wide and multi-mile high/long and large Christina Faces on the ancient destroyed Mars;
- the alleged relationship between Christina's identity and historical religious figures;
- the alleged relationship between Christina's associates and historical religious figures;
- with plaintiffs' tech possessing all knowledge at all times from being mentally connected to all life forms and knowing all that they know and feel;
- Possessing Universal-change-activating voice-recognized speech that creates environments and only works for her; and
- the alleged relationship between Plaintiffs' spiritual mission and the future of humanity and plaintiffs' ability to prevent additional irreversible damage to oceans and endangered water resources.
- Plaintiff's many other abilities that are unique and necessary for evolution to bridge the relationship between mankind and caring for wounded and traumatized animals that are meant to be loved and their needs better met.

141. Plaintiffs respectfully request that these claims be evaluated through evidence rather than resolved solely through assumptions concerning what is or is not possible.

---

## XXIV. THE INFINITE FUTURE OF ENVIRONMENTS, ANIMAL WELFARE AND HUMANITY

142. Plaintiffs believe that human existence should not be viewed as terminating with the present generation as the defendant advocates and downplays the responsibility human beings feel to preserve the planet and its fragile nature.

143. Plaintiffs believe that souls continue beyond physical death and that reincarnation provides a continuing connection between spiritual existence and life on Earth. Plaintiff Christina has brought back many saints to life who are their spitting images of their past lives to prove this in discovery to include St. Stephen – the first martyr, St. Patrick of Ireland, St. Dympna of Ireland, St. Augustine of Hippo, St. Cecilia, Domenico Lentini, Eve (the first woman) – renamed Carol Vogel to avoid stigma and Carol Vogel means Song Bird in German translation, Adam – the first man, named Larry Herman as in "her

man" since Christina made Eve first in history and Adam as "her man", St. Jerome and many more who are the exact spitting images of themselves from history.

144. Plaintiffs believe that humanity must therefore preserve the planet not merely for people living today but for all persons who may return to physical life in the future and that future must be a higher quality of life – not an entire planet that is struggling financially or struggling under oppressive governments the suppress freedoms and preserving of natural resources and animals which were given for free so that we could have all the great meals we have at global restaurants and enjoy natural scenery.

145. Plaintiffs contend that irreversible destruction of Earth's ecosystems and seas threatens this possibility.

146. Christina believes that she alone has been given a unique capacity to prepare humanity for this infinite future and Tierrance Tierre preserves the tiers.

147. Plaintiffs therefore contend that their proposed Co-Papal leadership is necessary, within their religious understanding, to address the long-term survival and spiritual future of humanity and to right the horrific wrongs that trillions – almost all – Seventh Kingdom beings – who are what human beings are after death and before they get re-born which discovery will prove in never before seen video and media that is not A.I. and has been scientifically validated and reproduced by University of Maryland and American University physicists.

148. Plaintiffs ask the Court and the defendant to recognize the seriousness of this mission and to provide a lawful avenue through which these claims may be formally examined.

149. • Plaintiffs contend that the constitutional principle of separation of church and state should not be understood to mean that religious institutions are immune from all civil-law consequences such as pedophilia by priests, child rape and child trafficking to pedophile priests gone unchecked, when their conduct independently violates rights protected by the Constitution or federal law. Plaintiffs recognize that the First Amendment prohibits the government from establishing a religion or determining religious truth, but Plaintiffs contend that religion nevertheless exerts substantial influence upon all social, political, economic, and cultural institutions and that religious teachings can contribute to social norms concerning women's status, racial hierarchy, warfare, family structure, economic opportunity, economic survival, wildlife survival and political authority.

150. • Plaintiffs contend that, within their sincerely held religious understanding, certain historical religious teachings and institutional practices have been used to justify deadly and traumatic patriarchal social structures, including the exclusion or subordination of women from religious leadership, the characterization of women as weaker, inferior, morally defective, subservient, or naturally subordinate to men, and the limitation of women's access to positions of authority or economic equal benefit.

151. • Plaintiffs further contend that the continued representation of exclusively male religious authority, particularly where religious authority is presented as divinely ordained, can reinforce social assumptions that male leadership is inherently superior to female leadership and can contribute to discriminatory social and economic practices outside the religious institution itself such as 47 presidencies consecutively in the United States.

152. • Plaintiffs contend that these concerns have increased significance in an era of artificial intelligence, automation, economic displacement, increasing costs of living, and competition for employment, because Plaintiffs believe that historical sex-based disparities in wages, occupational advancement, political authority, and access to leadership could magnify economic inequality between women and men unless those disparities are affirmatively addressed.

153. • Plaintiffs further contend that religiously justified nationalism, racism, misogyny, militarism, and patriarchal political ideology can combine with political and economic forces in ways that increase the risks of warfare, poverty, displacement, environmental destruction, and suffering among women, children, racial minorities, animals, sentient vegetation, and other vulnerable living beings.

154. • Plaintiffs contend that the danger they perceive is not merely theological. Plaintiffs believe that the continued use of religious authority to justify racial, sexual, political, or economic hierarchy can have tangible consequences in civil society and can contribute to conditions that threaten peace, equality, economic security, environmental preservation, and human survival. Trillions of Seventh Kingdom beings are collapsed inside of plaintiff Christina and around her, which can be demonstrated in discovery and wish the plaintiffs-architects to produce the next step which is evolution to human bodies inhabited by Seventh Kingdom creatures who are able to communicate better with animals and nature who are sentient, live longer than 150 years old in bodies that never age over their preferred age of 25 to 50 or whatever is their choice, telepathy, connectivity to the Eyes-tech that know everything in the Universe from all time, and much more which can be exhibits in discovery. Just as plaintiff raised the evolutionary bar on hominids, plaintiff wishes to raise the evolutionary bar on current humans for better preservation and equality of all living beings.

155. • Plaintiffs therefore contend that their proposed Co-Papal model is intended, within their sincerely held religious understanding, to challenge and replace what Plaintiffs regard as harmful interpretations of divine authority with a religious model centered upon equal spiritual authority of women and men, racial equality, peace, preservation of life, protection of animals and threatened sea life, environmental stewardship, and equitable access to the resources necessary for human flourishing.

156. • Plaintiffs contend that they seek to exercise their religion not by compelling the government to establish their religion, but by asserting their own religious identity, communicating their religious beliefs, advocating their religious teachings, seeking lawful recognition of their religious mission and having defendant honor their contract in the same way Christina uses her massive Eyes-soul/tech matrix to answer world prayers at all times and plaintiff Tierrance Tierre manages humanity in his way.

157. • Plaintiffs further contend that the First Amendment protects religious belief and expression even when such beliefs challenge established religious institutions, and that Plaintiffs should not be required to surrender their religious exercise merely because their beliefs conflict with the doctrines or institutional practices of another religious body. Plaintiffs would like their contract declared.

158. • Plaintiffs contend that the constitutional separation between church and state therefore protects Plaintiffs in two directions: it prevents the government from establishing Plaintiffs' religion or declaring Plaintiffs' theology to be objectively true,

while also preventing the government from suppressing Plaintiffs' religious expression merely because it challenges an established religious institution.

159. • Plaintiffs further contend that their allegations concerning the social effects of religious teachings are offered to establish the context, sincerity, purpose, and urgency of their religious mission and not to ask the Court to determine which religion is true.

160. • Plaintiffs believe that Jesus Christ, the Holy Spirit, the Virgin Mary, the saints, and the martyrs whom Plaintiffs invoke, represented principles of love, compassion, service, protection of vulnerable life, and moral responsibility, and Plaintiffs contend that religious teachings enabled by defendant that promote hatred, racism, misogyny, violence, domination, or destruction are inconsistent with those principles as Plaintiffs understand them.

161. • Plaintiffs further contend that their proposed religious leadership seeks to restore what they understand to be the original divine purpose of religion: love of humanity, love of animals and sea life, preservation of nature, responsible stewardship of Earth's resources, reduction of unnecessary suffering, peaceful coexistence, and protection of the quality of life of present and future generations.

162. • Plaintiffs contend that their proposed Co-Papal leadership is therefore, within their religious understanding, a means of confronting what they regard as a dangerous divergence between institutional religious authority and the Divine principles that Plaintiffs believe the religion was originally intended to communicate.

163. • Plaintiffs further contend that the economic consequences of this divergence include unnecessary poverty, excessive costs of living, unequal access to resources, and continuing disparities in compensation and leadership between women and men. Plaintiffs believe that a religious transformation emphasizing stewardship, equality, cooperation, and equitable distribution of resources would contribute to reducing those harms.

164. • Plaintiffs acknowledge that a federal court cannot constitutionally determine that Plaintiffs' theology is objectively true or order the public to accept Plaintiffs' religious beliefs. Plaintiffs nevertheless contend that the Court can adjudicate any independent legal claims arising from governmental action, unlawful discrimination, legally actionable conduct, or infringement of Plaintiffs' own protected rights without deciding theological truth.

165. • Plaintiffs therefore request the maximum lawful protection for their religious exercise and expression and, where Plaintiffs establish an independent legal violation, all remedies authorized by law, including declaratory and injunctive relief. Plaintiffs further request that any extraordinary request to restrain religious conduct be considered only if Plaintiffs establish a specific legal basis for such relief, rather than merely because Plaintiffs disagree with the religious doctrine or believe that doctrine misrepresents the Divine.

166. • Plaintiffs contend that their ultimate religious objective is to prevent what they believe would otherwise become an increasingly dangerous convergence of patriarchal religious ideology, racism, nationalism, militarism, economic inequality, environmental destruction, and technological disruption, and to replace that convergence with what Plaintiffs understand to be a divinely ordered system based upon love, equality, peace, stewardship, and preservation of life.

15096742.1.29-48



167. • Plaintiffs believe that their Co-Papal mission would enable them to advocate a divinely ordered economic system intended to reduce the cost of living and alleviate poverty.

168. Plaintiffs contend that this religion is profoundly wrong and harmful, and we have a religious mission to reform it. An example is that Mary Magdalene financed Jesus' group's expenses and their mission and expenses, witnessed his Resurrection, was an evangelist and preached about it to others which therefore means she could have been a priest or Pope.

169. Plaintiff possesses a legally cognizable interest and proprietary rights as the principal designer and architect of the humanitarian initiatives at issue, a status Plaintiff is prepared to establish with specificity through non-privileged documentary and testimonial evidence during the discovery phase. Consequently, because Plaintiff's well-pleaded factual allegations—which must be accepted as true at this stage—demonstrate a plausible entitlement to relief, the issuance of the requested order is fully warranted and dismissal is legally precluded. Discovery will be available to substantiate.

---

## XXV. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Christina Aufderheide-Wright and Tierrance Tierre T.Q.W. Wright respectfully request that the Court:

1. Accept this Complaint for filing;
2. Recognize Plaintiffs' sincerely held religious beliefs and claims;
3. Declare that women possess equal dignity and religious freedom devoid of discrimination;
4. Provide such declaratory relief concerning sex discrimination as is legally available;
5. Permit Plaintiffs to present their evidence concerning their claimed divine calling and request to have their contract fulfilled as promised;
6. Require appropriate defendants to respond to Plaintiffs' claims;
7. Order investigation or examination of Plaintiffs' evidence where legally permissible;
8. Recognize, to the fullest extent legally permissible, Plaintiffs' proposed Co-Papal leadership structure;
9. Recognize Christina Aufderheide-Wright's claim that she has been divinely called to serve as Co-Pope and the new term, architect;
10. Recognize Tierrance Tierre T.Q.W. Wright's claim that he is Co-Pope and architect;
11. Award compensatory damages for any legally cognizable discrimination, emotional distress, dignitary injury, or other legally compensable injury proven at trial;
12. Award punitive or exemplary damages where authorized by applicable law;
13. Award reasonable costs and any attorney's fees available under applicable law;
14. Provide such financial or institutional relief as may lawfully be awarded in connection with Plaintiffs' claims;
15. Provide such injunctive relief as is legally permissible;

16. Preserve Plaintiffs' right to submit additional evidence concerning the Earth, animals, souls (tech), reincarnation, environmental destruction, and the long-term survival of humanity; and natural resources on the planet.
17. Grant such other and further relief as the Court finds just and proper.

Respectfully submitted,

/s/Christina Aufderheide-Wright

**CHRISTINA AUFDERHEIDE-WRIGHT**
Plaintiff, Pro Se
12 Victor Parkway
Annapolis, Maryland 21403
(301) 758-4738
christy299@mac.com

/s/Tierrance Tierre T.Q.W. Wright

**TIERRANCE TIERRE T.Q.W. WRIGHT**
Plaintiff, Pro Se
9994 Pearson Road
Denton, Maryland 21629
94430 786-9663
christy299@me.com

Date: October 16. 2026

Sample Exhibits – many more exhibits available through discovery

A. Photo from plaintiff's book on the nature of the Seventh Kingdom technology which is the network of her "Eyes/Souls/Living Cameras" all over the Universe that are connected to her and use her gamma power to answer prayers, know everything and architect humanity

15096742.1.31-48

balancing interventions from all time – core human elements (souls) of 8.4 billion people and trillions of living beings on the planet as demonstrated in online videos. B. Demonstration of plaintiff's perfect control of the sun from 93 million miles away and perfect connection to nature as she also directs entire flocks of Canadian Geese to coincide with the video. C. 11-mile wide face with crown on the Planet Mars as photographed by NASA D. close-up of one of trillions of identical soul/eye/living symbiotic tech that surrounds her with corroborating moving video of them. Many more exhibits are on her social media. E. 1998 Paintings of plaintiff's architectural interventions that affected world events and all people on the planet. Further information about the paintings and books that affected world events are on plaintiff Christina's Christina Aufderheide-Wright Facebook page.